United States District Court
Southern District of Texas
FILED

FEB 17 1992

Jesse E. Clark, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

FEB 18 1992

Jesse E. Clark, Clerk
By Deputy: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| LEONEL TORRES HERRERA, | ) | |
| Petitioner | ) | |
| | ) | CIVIL ACTION NUMBER |
| VS. | ) | |
| | ) | M-92-30 |
| JAMES A. COLLINS, | ) | |
| DIRECTOR, TEXAS DEPARTMENT | ) | |
| OF CRIMINAL JUSTICE, | ) | |
| INSTITUTIONAL DIVISION, | ) | |
| | ) | |
| Respondent | ) | |

## M E M O R A N D U M

Came on to be considered before the Court the Petition for Writ of Habeas Corpus filed by Petitioner, Leonel Torres Herrera (hereinafter "Petitioner") pursuant to Title 28 U.S.C. § 2254, in which relief is sought from a finding of guilty and a sentence of death entered by the 197th Judicial District Court of Cameron County, Texas.   Respondent, James A. Collins, Director, Texas Department of Criminal Justice, Institutional Division, filed "Respondent's Opposition to Request for Stay of Execution, Motion to Dismiss Pursuant to Rule 9(b) and Alternatively Motion for Summary Judgment and Supporting Brief."

Having considered the pleadings on file, the Court issues the following ruling on the Petition for Writ of Habeas Corpus and the Respondent's responses.

## PROCEDURAL HISTORY

The Petitioner attacks a judgment of the 197th District Court of Cameron County, Texas, dated January 21, 1982, wherein he was convicted of capital murder by a jury and sentenced to death. Petitioner's conviction and death sentence were affirmed by the Texas Court of Criminal Appeals. Herrera v. State, S.W.2d 313 (Tex. Crim. App. 1984) (en banc). Rehearing was denied by the Court of Criminal Appeals without written order on January 16, 1985. The United States Supreme Court denied certiorari. Herrera v. Texas, 471 U.S. 1131 (1985). Petitioner filed a Petition for Writ of Habeas Corpus in the 197th District Court of Cameron County, Texas, which entered an order recommending denial of the Writ. The Texas Court of Criminal Appeals denied Petitioner's state writ application. Ex Parte Herrera, No. 12848-02 (Tex. Crim. App. August 2, 1985).

A Petition for Writ of Habeas Corpus was then filed with this Court on August 7, 1985 and was subsequently denied. Petitioner filed Notice of Appeal and this Court granted a Certificate of Probable Cause. The Fifth Circuit Court of Appeals affirmed this Court's Judgment. Herrera v. Collins, 904 F.2d 944 (5th Cir. 1990). A Petition for Writ of Certiorari to the United States Supreme Court was denied. Herrera v. Collins, _____ U.S. _____, 111 S.Ct. 307 (1990).

The Petitioner subsequently filed a habeas corpus application in the state trial court. The state trial court entered findings of fact and conclusions of law on February 14, 1991 and recommended

2

that the writ be denied.  The Petitioner's writ application was
transmitted to the Texas Court of Criminal Appeals which denied all
requested relief on the basis of the trial court's findings except
one (declining to adopt the trial court's finding of procedural
default on Petitioner's claim that the jury could not give effect
to the punishment phase evidence) and vacated the stay of
execution.  Ex parte Herrera, 819 S.W. 2d 528 (Tex. Crim. App.
1991) (Clinton and Maloney, J.J., dissenting).  The Petitioner
sought rehearing which was subsequently denied.  The Petitioner
has, on December 17, 1991, filed a Petition for Writ of Certiorari
to the United States Supreme Court and a Request for Stay of
Execution on February 12, 1992, which are still pending.  The state
trial court has scheduled the Petitioner's execution for Wednesday,
February 19, 1992.

Petitioner filed the instant Petition for Writ of Habeas
Corpus with this Court on Sunday, February 16, 1992.

The Petition, which is the Petitioner's second federal habeas
Petition, raises five claims for relief pursuant to Title 28 U.S.C.
§ 2254 as follows:

1.   The State's failure to reveal exculpatory evidence
     resulted in the conviction and sentence of an innocent
     person, in violation of the Sixth, Eighth, and Fourteenth
     Amendments.  Petitioner is innocent, another person has
     confessed to the crime, and the Petitioner's execution
     would violate the Eighth and Fourteenth Amendments.

2.   Petitioner was tried and sentenced to death for the
     murder of two police officers by a jury whose members
     included a police officer detective in an office that
     investigated the case, in violation of the Petitioner's
     Sixth, Eighth, and Fourteenth Amendment rights.

3

3.  During trial, recesses, and juror deliberations, juror-police officer Bressler was armed, and at least one juror noticed; in addition, and contrary to his sworn statements during voir dire, this officer knew one of the victims. These facts reveal that Petitioner's conviction and death sentence occurred in violation of his Sixth, Eighth, and Fourteenth Amendment rights.

4.  Petitioner's sentencer's were precluded from considering evidence which counseled in favor of a sentence less than death, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.

5.  The trial judge wrongfully refused to allow Petitioner to speak at all during Petitioner's trial and capital sentencing proceeding, thereby violating Petitioner's federal Constitutional rights.

Respondent, as previously stated, has responded to the claims for relief of Petitioner and in addition has filed a Motion to Dismiss pursuant to Rule 9(b) alleging abuse of writ and Motion for Summary Judgment.

<u>FACTUAL BACKGROUND</u>

The evidence at the trial revealed that on the evening of September 29, 1981, a Texas Department of Public Safety Officer, David Rucker (hereinafter "Rucker") was killed by a gunshot wound to the head. There were no witnesses to the shooting, but Petitioner's social security card was found near the body. Ten minutes later, approximately six miles from where Rucker's body was found, Enrique Carrisalez (hereinafter "Carrisalez") a Los Fresnos, Texas, city police officer, stopped a speeder travelling from the direction of the earlier shooting. As Carrisalez approached the stopped vehicle, the driver shot him in the chest. The officer died nine days later from the wound.

4

Carrisalez was accompanied by civilian Enrique Hernandez (hereinafter "Hernandez") who witnessed the shooting. Upon attempting to stop the vehicle, Carrisalez called in the license plate number of the car on the police radio. After the shooting, Hernandez radioed in a general description of the suspect's automobile. Immediately afterwards that night, Hernandez was interviewed by police officers.

On the next morning, Hernandez gave a statement to Texas Ranger Bruce Casteel. The police then proceeded to obtain an arrest warrant. On the morning of September 30, just hours after the shooting had occurred, Hernandez was called to the Harlingen police station and shown a display of photographs. From that display, he chose three photographs, one of which portrayed the Petitioner. The following afternoon, October 1, two police officers went to the hospital room of Carrisalez, showed him a single photograph of Petitioner, and asked him three times if he could identify it. Although he could not speak, Carrisalez nodded his head positively identifying Petitioner as the gunman. This same photograph was shown by itself to Hernandez later the same day, who also made a positive identification of Petitioner. The photograph was a mug shot that carried the notation "Edinburg Police Department" suggesting the person was already in custody.

Hernandez was shown another photographic display on October 6, 1981, two days after Petitioner had been taken into custody. At this showing, he positively identified Petitioner. Finally, on

October 24, Hernandez identified Petitioner from a five-man lineup attended by Petitioner's attorney.

Petitioner was arrested on October 4, 1981, and he was taken to the station for questioning. Following the arrest, police searched the Petitioner and found a letter written on the backs of several envelopes, wherein Petitioner discussed the death of both officers. After having been convicted of the capital murder of Carrisalez, Petitioner plead guilty to the murder of Rucker.

Petitioner in the present Petition, claims he is innocent of the murder of both officers and that his brother, Raul Torres, was the one who committed the murders and has offered several affidavits, including one of an alleged eyewitness, in support of his claim of innocence.

## RESPONDENT'S MOTION TO DISMISS
### UNDER RULE 9(b)

Respondent moves to dismiss this case under Rule 9(b) of the Rules Governing Section 2254 cases in the United States District Court, which provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

The abuse of writ doctrine generally "prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding." McCleskey v. Zant, _____ U.S. ____, 111 S.Ct. 1454, 1470, No. 89-7024 (April 16, 1991). In McCleskey, The Supreme Court applied the procedural default

6

standard to abuse of writ inquiries in the following manner:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ.   The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appeal for the first time and alleges that petitioner has abused the writ.   The burden to disprove abuse then becomes petitioner's.   To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions.

* * *

> Federal courts retain the authority to issue the writ of habeas corpus in a further narrow class of cases despite a petitioner's failure to show cause for a procedural default.   These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.   We have described this class of cases as implicating a fundamental miscarriage of justice.

111 S.Ct. at 1470 citing Murray v. Carrier, 477 U.S. 478, 485, 106

S.Ct. 2639, 2643 (1986).

Respondent's pleadings sufficiently satisfy the burden imposed in order to plead abuse of writ.   The burden shifts and Petitioner must meet the McCleskey standards in order to urge the five claims for relief now alleged.   Guided by McCleskey, this Court must consider all of Petitioner's present claims under the procedural default standard.   111 S.Ct. at 1470.

Because the Court will address the abuse of writ and/or procedural default issues with regards to each one of the five claims for relief, the Court will proceed to discuss each claim below.

## CLAIM I

**THE STATE'S FAILURE TO REVEAL EXCULPATORY EVIDENCE RESULTED IN THE CONVICTION AND SENTENCE OF AN INNOCENT PERSON, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS. PETITIONER IS INNOCENT, ANOTHER PERSON HAS CONFESSED TO THE CRIME, AND THE PETITIONER'S EXECUTION WOULD VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS**

In his first claim, the Petitioner presents allegations that maintain his actual innocence of the capital murder convictions. The Petitioner frames part of this claim as a violation of the constitutional principles enunciated in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner alleges, without proof of any evidence, that law enforcement officials knew of exculpatory evidence and withheld it from defense counsel at trial and sentencing. In the alternative he alleges he is innocent of the crime and his execution would violate the eighth and fourteenth amendments and an evidentiary hearing on this claim of innocence must be a full and fair one.

The Petitioner alleges he was not present when either of the two officers was killed. Petitioner avers he had nothing to do with either murder. To substantiate the claim, the Petitioner offers four affidavits. Affiant Hector J. Villarreal represented the Petitioner's brother Raul Herrera, on a charge of attempted murder. According to Villarreal, Raul Herrera confessed to him that he, not Petitioner, murdered both Rucker and Carrisalez. Villarreal states that Raul Herrera was murdered in 1984. (See Appendix to Petition, No. 10).

8

Affiant Juan Franco Palacios states that he was a friend of Raul Herrera. Palacios states that on one occasion, when sharing a cell at the Hidalgo County Jail in 1984, Raul Herrera confessed that he murdered Rucker and Carrisalez. (See Appendix to Petition, No. 11). Affiant Jose Ybarra, Jr., an old schoolmate of the Herrera brothers relates a similar confession. (See Appendix to Petition, No. 15). The most recent of the above mentioned affidavits was executed over a year ago and it appears that the Villarreal and Palacios affidavits were presented to the state trial court.

Raul Herrera's son, Raul Herrera, Jr., relates an eyewitness account of the murders in an affidavit executed within the last two weeks. (See Appendix to Petition, No. 16). Raul Herrera, Jr. states he was with his father on the date of the murders and that his father killed both Rucker and Carrisalez. Affiant Raul Herrera, Jr. states that the Petitioner was not involved and was not present when the murders occurred. This affiant states that he told a police officer this account, but the officer told him never to repeat it. The affiant states no attorney representing the Petitioner asked him about the events until recently.

Although the state trial court considered a claim of newly discovered exculpatory evidence in the Villarreal and Palacios affidavits, the Petitioner complains the trial court summarily dismissed them without a hearing as being meritless. The Petitioner argues he was entitled to an evidentiary hearing by the trial court on this matter and is especially so entitled in light

of the latest affidavits. However, as already stated, two of the affidavits including the recent alleged eyewitness one have never been presented to the state trial court.

Although one of the Petitioner's complaints under this claim is as a constitutional <u>Brady</u> violation, the Petitioner fails to adequately demonstrate any evidence of withholding exculpatory material by the prosecution. To state a <u>Brady</u> claim, the Petitioner must demonstrate that "(1) the prosecution suppressed evidence that was (2) favorable to the accused and (3) 'material to either guilt or punishment.'" <u>Cordova v. Collins</u>, ___F.2d___, No. 92-2037, (5th Cir. 1992) *citing* <u>Brady</u>, 373 U.S. at 87. The affidavits offered as 'new evidence' as well as the newspaper articles to which Petitioner refers in this Appendix fail to make any showing that the prosecution even knew about this evidence. The affidavits come from people closely associated with the Petitioner or his brother. The Petitioner has failed to show the first prong of a <u>Brady</u> claim and thus no constitutional violation under <u>Brady</u>. Since this allegation contains evidence which was acquired after the first federal habeas petition in 1985 this Court will not use the abuse of writ standard but will grant the Respondent's Summary Judgment Motion on this issue.

With regard to the second portion of Petitioner's claim in which he claims actual innocence and constitutional violations of his eighth and fourteenth amendment rights thereto, the general rule is that if a petitioner presents a substantial allegation of newly discovered evidence, a federal habeas court must grant an

evidentiary hearing. <u>Townsend v. Sain</u>, 372 U.S. 293, 313; 83 S.Ct. 745, 757 (1963). A petitioner is entitled to an evidentiary hearing when the state court did not provide a full, fair, and adequate hearing. <u>Id</u>. However, newly discovered evidence bearing directly upon guilt or innocence is not properly presented in a petition for habeas corpus, unless the petition implicates a constitutional violation. <u>Shaver v. Ellis</u>, 255 F.2d 509 (5th Cir. 1958) and <u>Smith v. Wainwright</u>, 741 F.2d 1248 (11th Cir. 1984) *reh'g denied, en banc* 747 F.2d 1468, *cert. denied* 470 U.S. 1088 (1985). As already stated, it is important to note that two of Petitioner's affidavits alleging his innocence including the very recent one of the alleged eyewitness have not been presented to the trial court.

This Court realizes that the Petitioner's execution is imminent and feels that, in order to ensure that Petitioner can assert his constitutional claims and out of a sense of fairness and due process, he should be afforded an opportunity to present his constitutional claim of alleged actual innocence along with his evidence including his recently acquired evidence on said issue to the state trial court and that the state court should be afforded the opportunity to consider said issues.

The Court realizes the state court is normally bound by a "rule of habeas abstention" preventing the state court from considering the merits of a habeas petition when a federal habeas proceeding is pending on the same matter. See <u>May v. Collins</u>, 948 F.2d 162, 169 (5th Cir. 1991) *cert. denied* 60 U.S.L.W. 3479 (U.S. 1992). As stated, the Court is also cognizant of the time

11

constraint faced by Petitioner. The Court believes the prudent course here is for this Court to grant the Petitioner's stay of execution request and for this Court to retain jurisdiction of the portion of Petitioner's first claim in which he alleges he is actually innocent and that his execution would violate his eighth and fourteenth amendment rights until noon, February 21, 1992 at which time the Court shall DISMISS said claim without prejudice provided Petitioner shall have filed by then an appropriate application with the state trial court with his constitutional claim of alleged actual innocence along with his recently acquired evidence on said issue. Said DISMISSAL shall be sooner and shall take effect at the time of filing of said state application if same be filed sooner.

In the event that this issue would not be found of sufficient grounds for granting a stay of execution, this Court, as an alternative and independent grounds for granting the stay, would note that Petitioner argues that he has not been provided a full and fair hearing as he alleges is constitutionally required since no evidentiary hearing was provided by the state trial court judge after he submitted some affidavits and this Court would therefore grant a stay pending the Fifth Circuit Court of Appeals opinion in May v. Collins, No. 91-6273 which raises similar issues as when an evidentiary hearing is required where, as here, the evidence is also a claim of actual innocence and affidavits are involved.

## CLAIM II

**PETITIONER WAS TRIED AND SENTENCED TO DEATH FOR THE MURDER OF TWO POLICE OFFICERS BY A JURY WHOSE MEMBERS INCLUDED A POLICE OFFICER DETECTIVE IN AN OFFICE THAT INVESTIGATED THE CASE, IN VIOLATION OF PETITIONER'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.**

## CLAIM III

**DURING TRIAL, RECESSES, AND JUROR DELIBERATIONS, JUROR-POLICE OFFICER BRESSLER WAS ARMED, AND AT LEAST ONE JUROR NOTICED; IN ADDITION, AND CONTRARY TO HIS SWORN STATEMENTS DURING VOIR DIRE, THIS OFFICER <u>KNEW</u> ONE OF THE VICTIMS. THESE FACTS REVEAL THAT PETITIONER'S CONVICTION AND DEATH SENTENCE OCCURRED IN VIOLATION OF HIS SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.**

In Claims II and III, which will be discussed together, Petitioner claims his sixth, eighth and fourteenth amendment rights were violated as a result of the service of Brownsville Police Detective Joseph J. Bressler (hereinafter, Bressler) as a juror in his case. Some conclusory statements are made about the service of three other jurors (two of whom were relatives of police officers and another an acquaintance of Rucker) but the two claims are worded on the service of Bressler.

The gist of the Petitioner's complaint as to Bressler's service appears to be centered on mere speculation on the Petitioner's part unsubstantiated by any evidence or law. The Petitioner complains that the service of Bressler created an appearance of unfairness and caused someone to serve who was automatically biased and would believe law enforcement officials and in addition created a constitutionally impermissible risk that a sentence of death would be imposed. In addition, Petitioner

13

presents an affidavit with hearsay evidence that a juror (who has refused to sign an affidavit to that effect) had indicated to an investigator for Petitioner that Bressler was armed during the proceedings and had known Rucker although during voir dire he claimed he did not. (See, Appendix to Petition No. 13).    An additional hearsay affidavit has been filed alleging that another juror had stated that Bressler, at the start of jury deliberations, expressed his view that the Petitioner was guilty and had stated facts about Petitioner that were not in evidence and that his views had an influence on her decision.  Said juror has also refused to sign such an affidavit and, in fact, when requested to do so, stated that she would not sign such an affidavit as it was not true.  (See, Appendix to Petition No. 14).

The Petitioner argues that, although the trial court alleged these claims were procedurally defaulted, the Petitioner properly presented them to the court which ruled on their merits. The Petitioner further asserts these claims implicate a fundamental miscarriage of justice and should not be dismissed before consideration on the merits.  This Court finds that Petitioner has not established cause and prejudice under either procedural default or abuse of writ.  The Court further finds that these claims do not implicate a fundamental miscarriage of justice as they do not embrace constitutional violations resulting in the conviction of one actually innocent of the crime or sentence.

The Petitioner's trial counsel moved for a mistrial based, in part, upon Petitioner's dissatisfaction with the selection of

Bressler and the other three as jurors.  Trial Record, vol. 12, p. 3.  However, the trial court in the most recent state habeas petition, specifically found that the Petitioner was procedurally barred from making these claims, as trial counsel made no direct challenge for cause to Bressler but rather simply asked for an additional preemptory challenge.  Ex Parte Herrera, No. 71,171, Amended Order of February 14, 1991.  The Court of Criminal Appeals found the trial court's conclusions were supported by the record.  Ex parte Herrera, 819 S.W.2d 528 (Tex.Crim.App. 1991).

The Court similarly finds that the Petitioner has not established cause for failure to raise these claims in his earlier federal petition.  Unquestionably, all of the facts surrounding Bressler's selection and service upon which Petitioner now bases his second and third claims, became known during jury selection and as to any which were not Petitioner has not shown cause as to why they were not discovered before the Petitioner filed his first federal habeas Petition in 1985.  The same applies as to any complaints about the other three jurors.  In short, nothing prevented Petitioner from raising Claims II and III earlier.  Petitioner fails to offer any evidence to aid in establishing cause.

The Petitioner seeks to skirt these impediments by asserting Claims II and III are not barred as they involve a fundamental miscarriage of justice.  The Court questions whether the Petitioner has even identified a constitutional violation which would lead to the conviction of an innocent person here as required by McCleskey.

While Petitioner states his sixth, eighth and fourteenth Amendment rights were violated, the Court as previously noted has not been cited anything in law or evidence other than speculation and conclusion that would lead to the conclusion of any constitutional violation.

In addition, Petitioner has not indicated that he has any evidence, hearsay or otherwise, that even if Bressler did carry a gun during his service as a juror, it affected any other juror, nor has he presented other than hearsay any evidence to the effect that Bressler did know Rucker contrary to his own sworn statement during voir dire and that even if he did it affected any juror's decision.

Petitioner, having failed to satisfy the McCleskey standard as to Claims II and III, must have said claims dismissed as an abuse of writ.

CLAIM IV

> PETITIONER'S SENTENCER'S WERE PRECLUDED FROM CONSIDERING EVIDENCE WHICH COUNSELED IN FAVOR OF A SENTENCE LESS THAN DEATH, IN VIOLATION OF PETITIONER'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

In this fourth claim for relief, Petitioner asserts, under Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934 (1989) that: (1) the jury was precluded from considering mitigating circumstances which were in evidence; and, (2) other, available evidence was not presented because of counsel's understanding of the Texas capital sentencing scheme.  He argues that had the jury been able to consider this evidence beyond the scope of the two special issues on deliberateness and future dangerousness, it could have imposed

16

a life sentence.   Therefore, Petitioner argues, the Texas statute was applied in violation of his sixth, eighth and fourteenth amendment rights.   The Respondent argues that raising this issue in this second federal habeas petition as opposed to raising it in the first federal habeas petition in 1985 constitutes abuse of the writ and under Rule 9(b) the claim should be dismissed.

Petitioner asserts evidence of his military service, his remorse, his mental instability, his substance abuse, his caring family, and police brutality after his arrest is supported by the record.   While conceding that this evidence could have been considered under the special issues of the Texas capital sentencing scheme, the Petitioner claims the special issues allowed only an aggravating effect upon future dangerousness.

Petitioner also contends evidence such as psychological evaluations were not pursued because of trial counsel's understanding of the effect to be given mitigating circumstances under the special issues. Petitioner alleges counsel believed any such evidence would only contribute to affirmative answers on the special issues.   As a result, counsel did not bring evidence of an abusive father, head injuries, and untreated illnesses to the jury. The Petitioner has recently secured a psychological evaluation which asserts the Petitioner suffered from neurological impairment and Post Traumatic Stress Disorder (See, Appendix to the Petition No. 9).

As stated previously, McCleskey held that Rule 9(b) provides that a second or successive petition for federal habeas relief

which raises claims that could have been raised in an earlier federal habeas petition should be dismissed unless the Petitioner can demonstrate both cause for his failure to present the claim in the earlier petition and resulting prejudice.  The McCleskey Court went on to say that a petition may make a valid cause showing where a particular legal theory was not yet a viable option for the Petitioner.

Petitioner argues that his pre-Penry belief that courts had correctly interpreted the Texas capital punishment statute and that presentation of evidence as to the Petitioner's mental incapacities and other alleged mitigating circumstances would only support a "Yes" in response to the special issues presented to the jury for consideration, is cause for the Petitioner's failure to raise this claim earlier.

There is no merit to the Petitioner's argument that his understanding of the law prior to Penry explains his failure to make this claim previously in his 1985 federal habeas petition.

The Fifth Circuit in Cuevas v. Collins, 932 F.2d 1078, (5th Cir., 1991) found that Penry claims have been made since 1980 when the Texas Court of Criminal Appeals found that there was no need for an explanatory jury charge with regard to the consideration of mitigating evidence during the sentencing phase of a capital murder trial.  Quinones v. State, 592 S.W.2d 933, 947 (5th Cir. 1980).  The Fifth Circuit held,

> [i]n Selvage v. Lynaugh, 842 F.2d 89, 94 (5th Cir. 1988), we found that as early as April 1980, a "Penry" contention, as it later became known, was "not a recently found legal theory not knowledgeable by competent

counsel". . . . There is no basis for asserting that it would have been futile for Cuevas to have pursued his <u>Penry</u> claim in his first federal habeas petition. He did so in the federal district court but abandoned the argument on appeal. Nor is the fact that the law is "developing" of aid to Cuevas. The "question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." <u>Smith v. Murray</u>, 477 U.S.527, 106 S.Ct.2661, 2667, 91 L.Ed.2d 434 (1986).

<u>Cuevas</u> at 1082.

Thus, Petitioner's argument that the law in 1985, when Petitioner could have included this claim with his first federal habeas petition, did not provide for a viable <u>Penry</u> claim, must fail as Petitioner has failed to show any cause for failure to have raised these issues then.

The Petitioner alternatively argues that to bar his <u>Penry</u> claim may give rise to a viable fundamental miscarriage of justice claim. The Court is cognizant that the type of cases where a fundamental miscarriage of justice would apply is in "extraordinary instances where a constitutional violation has caused the conviction of one innocent of a crime." <u>McCleskey</u>, at 1470.

The Supreme Court has extended the term "innocent of a crime" to include cases where one would be "innocent" of a death sentence. As the Supreme Court stated in <u>Dugger v. Adams</u>, 489 U.S. 401, 109 S.Ct. 1211, 1217 n.6 (1989):

In <u>Murray v. Carrier</u>, 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986), this Court stated that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." We made clear, however, that such a case would be an "extraordinary" one, <u>ibid.</u>, and have since

recognized the difficulty of translating the concept of "actual" innocence from the guilt phase to the sentencing phase of a capital trial. <u>Smith v. Murray</u>, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). We do not undertake here to define what it means to be "actually innocent" of a death sentence.... Demonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is "actually innocent" of the sentence he or she received.

This Court has faced this issue before in <u>Bird v. Collins</u>, in a case where the petitioner was alleging evidence of psychological, sociological and mental condition which he claimed made him innocent of the death sentence and granted a stay pending oral argument on this issue. The Fifth Circuit in <u>Bird v. Collins</u>, 943 F.2d 629 (5th Cir. 1991) at p. 630 vacated this Court's decision to stay the execution pending oral argument and stated as follows:

The district court hesitated over the expressed uncertainty of the Supreme Court in translating the concept of actual innocence to innocence of a death sentence. The district court quoted from *Smith v. Murray*, 477 U.S. 527, 539, 106 S.Ct. 2661, 2884, 91 L.Ed.2d 434 (1986) that:

We do not undertake here to define what it means to be "actually innocent" of a death sentence.... Demonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is "actually innocent" of the sentence he or she received. The approach taken by the dissent would turn the case in which an error results in a fundamental miscarriage of justice, the "extraordinary case." [*Murray v. Carrier*, supra. 477 U.S. [478] at 496, 106 S.Ct. [2639], at 2650, [91 L.Ed.2d 397 (1986)], into an all too ordinary one.

We recently acknowledged this uncertainty in *Cuevas v. Collins*, 932 F.2d 1078 (5th Cir. 1991). However we also concluded that whatever may be the "extraordinary" level of *Penry* type evidence not given expression under the

question of deliberateness and future dangerousness sufficient to render a petitioner "actually innocent" of a sentence as opposed to error that "might have affected [its] accuracy", it was not presented by *Cuevas*.  We reach the same conclusion here.

This Court, therefore, notes that here as in <u>Bird</u> whatever the extraordinary level of <u>Penry</u> type evidence not given expression under the questions of deliberateness and future dangerousness sufficient to render a Petitioner actually innocent of a sentence as opposed to error that might have affected its accuracy is not present and therefore this claim must be dismissed as an abuse of writ.

<u>CLAIM V</u>

THE TRIAL JUDGE WRONGFULLY REFUSED TO ALLOW PETITIONER TO SPEAK AT ALL DURING PETITIONER'S TRIAL AND CAPITAL SENTENCING PROCEEDING, THEREBY VIOLATING PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS.

The Petitioner contends he was restrained by the trial court from exercising *any* constitutional rights.  The Court, responding to an outburst by Petitioner, instructed him not to disrupt the proceedings or the court would have him placed in an observation room.  Petitioner now protests, without any evidentiary support, that this action rendered him effectively mute and unable to participate in his defense.

The Petitioner derives this claim from events readily discernible in the record.  As already stated, at one point during voir dire, the Petitioner spoke out, complaining of the proceedings.  The trial court ordered that he be placed in the

observation room where he could see and hear the proceedings without being disruptive. This transpired before a noon recess. Trial Record, vol. 10, p. 61-63. After reconvening, with the Petitioner apparently back at counsel's table, the court again cautioned him not to be disruptive or he would return to the observation room. The court noted it was in the Petitioner's interests to be able to consult with counsel. The Petitioner acknowledged comprehension of the court's warning. Trial Record, vol. 10, p. 66-67. The Petitioner points to no other occasion in which he was removed to the observation room nor where he was prohibited from consulting with counsel.

As stated previously, the Court in McCleskey held that Rule 9(b) provides that a second or successive petition for federal habeas relief which raises claims that could have been raised in an earlier federal habeas petition should be dismissed unless the petitioner can demonstrate both cause for his failure to present the claim in the earlier petition and resulting prejudice.[1] The Petitioner directs this Court to nothing that would demonstrate cause for failure to have previously raised this issue. As previously noted, the facts serving as the basis for this claim were clearly ascertainable from the Trial Record. Therefore,

---

[1] The Court recognizes that this claim is also procedurally barred. The Texas Court of Criminal Appeals found that the trial court's findings of fact and conclusions of law as to this claim, in which the trial court found error was not preserved, were supported by the record. Ex Parte Herrera, 819 S.W.2d 528 (Tex. Crim. App. 1991). The cause and prejudice standard still applies. Petitioner fails to demonstrate cause for failure to preserve error.

Petitioner's only door to relief on this claim hinges on whether this claim implicates a fundamental miscarriage of justice. See McCleskey at 1470.

The Court finds nothing in this claim implicating a fundamental miscarriage of justice. The Petitioner identifies no constitutional violation in this claim which "probably has caused the conviction of one innocent of the crime." McCleskey, id. The Court appreciates an accused's basic right to be present in the courtroom during all stages of a trial under the Sixth Amendment. However, this right does not allow a defendant to disregard proper courtroom decorum nor to disrupt the conduct of trial proceedings. As the Supreme Court stated in Illinois v. Allen, 397 U.S. 337, 343; 90 S.Ct. 1057, 1060-1061 (1970) reh'g denied, 398 U.S. 915, 90 S.Ct. 1684 (1970).

> Although mindful that courts must indulge every reasonable presumption against loss of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

In Petitioner's trial, he was briefly placed in an observation room and allowed to return, enabling him to participate in his defense. The Petitioner points to nothing which demonstrated a constitutional violation. Therefore, this claim constitutes an

23

abuse of writ and should be dismissed.

## REQUEST FOR EX PARTE HEARING FOR
## EXPERTS AND INVESTIGATORS

Nothing in the Petition indicates the necessity of this Court holding an __ex__ __parte__ hearing of the appointment of experts and investigators for Petitioner.

## CONCLUSION

For the foregoing reasons the Court is of the opinion that the Respondent's Motion to Dismiss pursuant to Rule 9(b) should be GRANTED as to Petitioner's claims for relief Numbers II, III, IV and V. The Court is further of the opinion that the Respondent's Motion for Summary Judgment as to the portions of Claim Number I, which relies on constitutional Brady violations should be GRANTED and that the Court should retain jurisdiction of the remaining portion of Petitioner's Claim Number I in which he alleges he is actually innocent and his execution would violate his eighth and fourteenth amendment rights until noon, February 21, 1992 at which time this Court will DISMISS said claim without prejudice provided Petitioner shall have filed by then the appropriate application with the state trial court with his constitutional claim of alleged actual innocence along with his evidence including his recently acquired evidence on said issue. If same be filed sooner said DISMISSAL shall take effect at the time of filing of said application. In the event that this issue would not be found of sufficient grounds for granting a stay of execution, this Court, as an alternative and independent grounds for granting the stay,

would note that Petitioner argues that he has not been provided a full and fair hearing as he alleges is constitutionally required since no evidentiary hearing was provided by the state trial court judge after he submitted some affidavits and this Court would therefore grant a stay pending the Fifth Circuit Court of Appeals opinion in <u>May v. Collins</u>, No. 91-6273 which raises similar issues as when an evidentiary hearing is required where, as here, the evidence is also a claim of actual innocence and affidavits are involved. The Court is also of the opinion that in order to accomplish this the Motion for Stay of Execution should be GRANTED as per the order of even date herewith.

The Clerk shall send a copy of this Memorandum to counsel for Petitioner and counsel for Respondent.

Done this 17th day of February, 1992 at McAllen, Texas.

Ricardo H. Hinojosa
UNITED STATES DISTRICT JUDGE